UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARLOS M.[1]                                                                                         PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:24-CV-203-DPJ-ASH

COMMISSIONER OF SOCIAL SECURITY                                                  DEFENDANT

REPORT AND RECOMMENDATION

Carlos M. filed his claim for supplemental security income (SSI) on November 22, 2021 alleging disability beginning the same day. After the Social Security Administration initially and upon reconsideration denied his application, he requested and was granted a telephonic hearing before an administrative law judge (ALJ). On October 18, 2023, the ALJ held the hearing, and on October 30, 2023, she issued a decision finding Carlos M. not disabled. The Appeals Council denied review, and on April 11, 2024, he filed this appeal under 42 U.S.C. § 405(g). As explained below, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Facts and Procedural History

Carlos M. was 45 years old at the time he applied for SSI alleging disability. He completed the eleventh grade and has no past relevant work experience. He suffers from diabetes, osteoarthritis, anxiety, depression, and obesity. On February 24, 2022, he sustained a left clavicle fracture from a motor vehicle collision. The symptoms from that injury relate to his SSI claim.

---

[1] Consistent with guidance from the Judicial Conference's Committee on Court Administration and Case Management regarding privacy concerns in Social Security cases, the undersigned identifies the plaintiff only by first name and last initial.

1

The ALJ evaluated Carlos M.'s claim using the five-step sequential evaluation process for determining disability.[2] At step one, she found that he had not engaged in substantial gainful activity since November 22, 2021, the alleged disability onset date. R. at 12 (Doc. [6] at 16). At step two, she found that Carlos M. had the following severe impairments: diabetes, osteoarthritis, anxiety, depression, obesity, and a history of left clavicle fracture. *Id.* The ALJ found that his other impairments—acid reflux, hemorrhoids, hypertension, a thyroid disorder, and alcohol abuse—were not severe. At step three, she found that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* at 15 (Doc. [6] at 19).

The ALJ then examined the record and determined that Carlos M. had the residual functional capacity (RFC) to "perform light work as defined in 20 CFR 416.967(b) except he can engage in frequent stooping, kneeling, crouching, crawling, climbing, and balancing." *Id.* at 17 (Doc. [6] at 21). She also found the following:

---

[2] Disability is defined by statute as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating a disability claim, the ALJ engages in a five-step sequential process, making the following determinations: (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made); (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made); (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled); (4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled). *See* 20 C.F.R. §§ 404.1520; 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The claimant bears the burden to prove disability throughout the first four steps; if she sustains her burden through step four, the burden shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

> [Carlos M.] can sustain and perform simple routine tasks for two-hour periods. He can engage in no work with the general public. He can engage in occasional interaction with co-workers and supervisors. He can engage in no overhead reaching with the upper extremities.

*Id.*

At step four, the ALJ found Carlos M. had no relevant past work. *Id.* at 20 (Doc. [6] at 24). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that Carlos M. can perform. *Id*. Relying on the testimony of a vocational expert (VE), the ALJ concluded Carlos M. can perform the jobs of housekeeping cleaner, laundry sorter, and stock checker. *Id.* at 21 (Doc. [6] at 25). She therefore found that Carlos M. was not disabled. *Id.*

II.     Standards

"On judicial review, the ALJ's determination that a claimant is not disabled will be upheld, if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and if it was reached through the application of proper legal standards." *Loza v. Apfel*, 219 F.3d 378, 389 (5th Cir. 2000). Substantial evidence "is less than a preponderance of the evidence" and exists where the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In reviewing a denial of disability benefits, the Court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the [ALJ's], even if the evidence weighs against the [ALJ's] decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

III.     Analysis

Carlos M. raises two issues on appeal: He argues that (1) the VE's testimony that he could perform several jobs despite the RFC[3] limiting him to *no* overhead reaching creates an apparent unresolved conflict with the Dictionary of Occupational Titles (DOT) classification of the jobs as requiring reaching in any direction, and (2) the ALJ erred by failing to properly incorporate Dr. Yazdani's medical opinion in her RFC determination. Pl.'s Br. [9] at 3.

A.     Alleged Conflict

Carlos M. contends the ALJ failed to resolve an apparent conflict between the DOT's reaching requirements for three jobs and the VE's testimony that an individual with no capacity for overhead reaching could perform those three jobs. *Id.* at 4–5. The DOT defines each of these jobs as requiring reaching in any direction. But the VE testified that a hypothetical individual with the RFC assigned to Carlos M. could perform these jobs notwithstanding the inability to reach overhead. The VE also expressly testified that at least one of the jobs—stock checker—required no overhead reaching. According to Carlos M., the ALJ failed to resolve the conflict between the VE's testimony and the DOT, resulting in "a decision that is not based on proper legal standards." *Id.* at 5.

Under Social Security Policy Interpretation Ruling (SSR) 00-4p, the ALJ is required to inquire on the record whether there is a conflict between the VE's testimony and the DOT. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). This imposes on the ALJ "'an affirmative responsibility to ask about 'any possible conflict' between VE evidence and the DOT . . . before

---

[3] An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

4

relying on VE evidence to support a determination of not disabled.'" *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (quoting *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)). "When a conflict arises, an ALJ is permitted to rely on the vocational expert testimony over the DOT if the record reflects an adequate basis or reasonable explanation for deviating from the DOT." *Byers v. Colvin*, No. 4:14-CV-00164-CAN, 2017 WL 1251079, at *5 (E.D. Tex. Mar. 10, 2017).

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000); *see also* SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000) (requiring the ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [a VE] and information in the [DOT]" and "[e]xplain in the determination or decision how any conflict that has been identified was resolved").

The failure to resolve a direct and obvious conflict between the VE's testimony and the DOT lessens "the weight afforded to the vocational expert testimony such that reversal and remand for lack of substantial evidence usually follows." *Santamore v. Kijakazi*, No. 1:20-CV-169-HSO-LGI, 2022 WL 18670394, at *5 (S.D. Miss. Dec. 30, 2022) (Isaac, M.J.) (citing *Carey*, 230 F.3d at 146–47), *report and recommendation adopted sub nom. Santamore v. Comm'r of Soc. Sec.*, 2023 WL 424275 (S.D. Miss. Jan. 25, 2023). But "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an

5

expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey*, 230 F.3d at 146–47.

The Court must first determine whether the record reflects a conflict and, if so, whether it is direct and apparent or indirect or implied. At the hearing, the ALJ expressly confirmed with the VE that if there were any conflicts between her testimony and the DOT, the VE would identify the conflict and the basis for her opinion. R. at 43 (Doc. [6] at 47). The ALJ then asked the VE what jobs exist in the national economy for a hypothetical individual with Carlos M.'s RFC. *Id.* at 43–44 (Doc. [6] at 47–48). The VE testified that there are several light, unskilled jobs such an individual can perform: housekeeping cleaner (DOT 323.687-014; 180,000 jobs), laundry sorter (DOT 361.687-014; 190,000 jobs), and stock checker (DOT 299.667-014; 85,000 jobs). *Id.* at 44 (Doc. [6] at 48). As to the last, the ALJ asked: "The stock check[er], it doesn't require overhead reaching?" *Id.* The VE confirmed that it did not. *Id.* Carlos M.'s attorney then asked a modified hypothetical that involved reaching, even overhead, but modified the frequency to be on a less-than-occasional basis. *Id.* at 45 (Doc. [6] at 49). The VE testified that that would eliminate the positions. *Id.*

The DOT's narrative descriptions for the three jobs the VE identified do not specify that *overhead* reaching is required. But the Selected Characteristics of Occupations (SCO), a companion publication to the DOT, classifies those jobs as requiring frequent reaching. *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Part A at 98, 132, 203. Carlos M. argues that the frequent reaching requirement necessarily includes frequent *overhead* reaching because the word "reaching" in the SCO "means extending the hands and arms in any direction." *See id.* App. C at C–3. Because "any direction"

could include overhead reaching, he asserts the VE's testimony is in apparent conflict with the DOT's job descriptions, and that the ALJ erred by failing to resolve the conflict before relying on the VE's testimony. Pl.'s Br. [9] at 7.

District courts in the Fifth Circuit are divided on whether an apparent conflict exists when the DOT's job descriptions do not require overhead reaching. A number of courts have found no conflict. *See, e.g.*, *Santamore v. Comm'r of Soc. Sec.*, No. 1:20-CV-169-HSO-LGI, 2023 WL 424275, at *5 (S.D. Miss. Jan. 25, 2023) (Ozerden, J.) (finding no conflict between the VE's testimony and the DOT because the DOT "does not specifically address overhead reaching as a requirement for either of the jobs cited by the vocational expert"); *Joseph B. v. Saul*, No. 4:19-CV-1285, 2020 WL 7024310, at *9 (S.D. Tex. Nov. 30, 2020) (holding there was no conflict because the DOT "does not specifically state, or otherwise indicate, that overhead reaching is required"); *Sherron F. v. Berryhill*, No. 3:17-CV-01058-BT, 2018 WL 4680565, at *4 (N.D. Tex. Sept. 28, 2018) (holding no conflict exists between VE's opinion that a person limited to occasional overhead reaching can work when DOT's descriptions for identified jobs are silent on what type of reaching is required). Other courts have found an apparent conflict because "any reaching" includes the possibility for overhead reaching. *Santamore*, 2023 WL 424275, at *5 (collective cases).

Carlos M. relies on two cases from the Northern District of Mississippi which he says are "nearly analogous" and "convincing": *Everhart v. Comm'r of Soc. Sec.*, No. 3:17-CV-188-DAS, 2018 WL 3614196 (N.D. Miss. July 27, 2018), and *Herrod v. Comm'r of Soc. Sec.*, No. 4:20-CV-73-DAS (N.D. Miss. April 1, 2021), at Report & Recommendation [26] [hereinafter "Herrod R&R"]. Pl.'s Br. [9] at 5. These cases involved a conflict between the VE's testimony and the

7

DOT's provisions concerning overhead bilateral reaching, but the specific issue was over the frequency—not the nature—of reaching. They are distinguishable.

In *Everhart*, the vocational expert testified that the claimant was limited to occasionally reaching overhead bilaterally and listed jobs that the DOT indicated required constant and frequent reaching. 2018 WL 3614196, at *3. At the hearing, however, the ALJ only asked if the vocational expert's testimony was consistent with the DOT. *Id.* "The ALJ elicited no explanation," and the court remanded for further development. *Id. Herrod* involved a similar issue. Herrod R&R at 3. That claimant's RFC allowed only occasional overhead reaching, but the three jobs the vocational expert identified required frequent reaching. *Id.* As in *Everhart*, "there [had] been no explanation about the amount of overhead reaching involved in these jobs." *Id.*

At Carlos M.'s hearing, the ALJ specifically addressed both the VE's obligation and the extent of the overhead reaching requirement:

> ALJ: And you're familiar with Social Security's definitions of skilled and exertional levels, and **you understand if your testimony's not consistent with the Dictionary of Occupational Titles you need to advise us of the conflict and the basis for your opinion?**
> VE: I will
> ALJ: Okay.
>
> * * *
>
> ALJ: I'd like you to assume an individual the same age, education, and vocational profile, who's limited to light work, frequent stooping, kneeling, crouching, crawling, climbing, and balancing. The individual can sustain and perform simple, routine tasks for two-hour periods. No work with the general public, occasional interaction with coworkers and supervisors, and **no overhead reaching with the upper extremities. Given that residual function capacity, are there jobs that [Carlos M.] can perform?**
> VE: We have light, unskilled.
> ALJ: Okay.

> VE: We have a housekeeping cleaner, with a DOT of 323.687-014, with an SVP: 2. There's approximately 180,000. We have a laundry sorter with a DOT of 361.687-014, with an SVP:2. There's approximately 190,000. And we have -- let's see. A stock checker, with a DOT of 299.667-014, with an SVP: 2. And there's approximately 85,000. And these are light, unskilled.
> ALJ: **The stock check, it doesn't require overhead reaching?**
> VE: Correct.

R. at 43–44 (Doc. [6] at 47–48) (emphasis added).

Unlike in *Everhart* and *Herrod*, there is no direct and apparent conflict here. For starters, the VE confirmed at the outset that she would advise the ALJ *if* her opinion conflicted with the DOT. This was consistent with SSR 00-4p. *See* SSR 00-4p, 2000 WL 1898704, at *2. Thus, when the ALJ provided a hypothetical RFC that explicitly included Carlos M.'s limitation of "no overhead reaching with the upper extremities," it was implicit that the VE was testifying about jobs with no such requirement. In other words, one could infer the VE believed there was no conflict. But the Court need not imply consistency because the ALJ expressly established it for one of the jobs. The ALJ asked the VE to confirm that the stock checker job required no overhead reaching. She testified it did not.

So is there a conflict between the VE's testimony and the DOT's definition of these jobs? Judge Ozerden's decision in *Santamore* is on point and illustrates there is no conflict. That decision observed that although the DOT defines reaching that can be "in *any* direction," this cannot be interpreted to mean one must have the ability to reach "in *all* directions." *Santamore*, 2023 WL 424275, at *5. The DOT merely defines overhead reaching (a subset of reaching "in any direction") as a possibility, not a requirement of the job. *Id.* "As a result, any testimony regarding overhead reaching by the vocational expert was not 'facially different from the exertional or skill level provided for that job in the DOT' because the DOT was silent as to the

9

specific type of reaching required." *Id.* (quoting *Carey*, 230 F.3d at 145–46). That court reasoned:

> At most, this leaves open the possibility that reaching can, but does not automatically, encompass overhead reaching. Since the DOT does not speak to the direction of reaching required for the jobs at issue, the vocational expert's testimony regarding the frequency of overhead reaching required by these jobs did not conflict with the DOT, and the ALJ could rely on it without further explanation.

*Id.* This conclusion is also consistent with *Carey*'s recommendation that "the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony." *Carey*, 230 F.3d at 145. That general principle applies here.

As to the stock checker job, the ALJ could rely on the VE's testimony that it required no overhead reaching—testimony that does not conflict with the DOT. The VE's testimony addressed an area where the DOT was silent. *Williams v. Kijakazi*, No. 3:20-CV-3222-M-BH, 2022 WL 3045752, at *13 (N.D. Tex. July 6, 2022) (Ramirez, M.J.) ("District courts in this circuit have concluded that frequent reaching "can be in any direction" and "the DOT does not describe any job duties that would *require* overhead reaching.") (collecting cases). Even if this were an implied conflict, the VE's testimony that working as a stock checker requires no overhead reaching is substantial evidence sufficient to support the ALJ's decision. *Calvert v. Comm'r, Soc. Sec. Admin.*, No. 2:18-CV-066-RSP, 2019 WL 1317313, at *3 (E.D. Tex. Mar. 22, 2019) (finding the VE's testimony that a job defined as including frequent reaching required only occasional overhead reaching constitutes substantial evidence under *Carey* to support the ALJ's decision).

The stock checker job alone is a sufficient basis to affirm the ALJ's decision. R. at 21 (Doc. [6] at 25) (stating 85,000 stock checker jobs exist in the national economy). And Carlos M. does not argue to the contrary. *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 555 (S.D. Miss. 2022)

(holding 51,649 cumulative jobs was sufficient and observing "the Fifth Circuit has held that the existence of 50,000 jobs in the national economy provides substantial evidence of a significant number of jobs" (citing *Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005))); *Bailey v. Kijakazi*, No. CV 22-295, 2022 WL 18832044, at *9 (E.D. La. Dec. 8, 2022), *report and recommendation adopted*, 2023 WL 2185682 (Feb. 23, 2023) ("[T]he Commissioner's burden at Step 5 . . . is satisfied by showing the existence of only one job with a significant number of available positions that the claimant can perform.").

As to the other two jobs, the ALJ failed to expressly ask if those jobs require overhead reaching. As discussed above, there is no direct conflict. But to the extent this gives rise to an implied conflict, Carlos M.'s counsel had a chance to cross-examine the VE about this issue. His failure to do so constitutes waiver. *Carey*, 230 F.3d at 146; *see Ruffin v. Colvin*, No. 3:16-CV-18-DPJ-FKB, 2017 WL 536549, at *7 (S.D. Miss. Feb. 8, 2017) (finding implied conflict does not require remand because claimant failed to raise the conflict before the ALJ). Indeed, the transcript indicates Carlos M.'s counsel was aware overhead reaching could be an issue. He questioned the VE on a hypothetical involving a different *frequency* of reaching in different directions (on a less-than-occasional basis), and made clear that his hypothetical *did* include overhead reaching. Yet counsel failed to raise the issue of any conflict between the DOT's job descriptions and the VE's testimony identifying jobs an individual with no capacity for overhead reaching can perform. Had counsel done so, the ALJ could have elicited a further explanation from the VE. A claimant generally may not raise an implied conflict for the first time on appeal. *See Carey*, 230 F.3d at 146–47. At least not one addressing the nature as opposed to the frequency of reaching. *See Santamore*, 2023 WL 424275, at *6 (observing that when courts have remanded on an inconsistency between a job's reaching requirement and a claimant's capacity,

11

the reason has been uncertainty about whether the job requires the same *frequency* of reaching overhead as reaching as other directions).

The undersigned finds there is no conflict between VE's testimony about the stock checker job and the DOT that has not been supported by substantial evidence. And as to the other jobs identified by the VE, the conflict is at best implied or indirect, and the undersigned finds Carlos M. waived the issue by failing to raise it at the hearing.

      B.      Medical Opinion Evidence

Carlos M. challenges the ALJ's finding because she failed to sufficiently explain why she found Dr. Yazdani's medical opinion of his mental limitations persuasive. Pl.'s Br. [9] at 12. He also argues that she failed to incorporate Dr. Yazdani's findings into the RFC or explain why her findings were excluded. *Id.*

      1.      Persuasiveness of Opinion

The ALJ's articulation requirement for consideration of medical opinion evidence is addressed by the revised rules in 20 C.F.R. § 404.1520c.[4] Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Before an ALJ may discount or reject an opinion, she must "articulate in [the] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [the claimant's] case record. *Id.* § 404.1520c(b). The ALJ considers five factors when evaluating the persuasiveness of medical opinions: supportability, consistency, relationship with the claimant, specialization, and other factors that may support or contradict the opinion. *See id.* § 404.1520c(c). In evaluating persuasiveness, the most important factors are supportability and consistency. *See id.* §

---

[4] The revised rules in 20 C.F.R. § 404.1530(c) apply to claims filed after March 27, 2017.

404.1520c(b)(2); *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023). An ALJ need not explain how she considered the other factors in determining persuasiveness. 20 C.F.R. § 404.1520c(b)(2).

"If the Court cannot determine the ALJ's reasons for finding a given medical opinion to be persuasive in the first instance, the Court cannot determine whether that finding is supported by substantial evidence." *Harmon v. Comm'r of Soc. Sec.*, No. 3:23-CV-195-HTW-RPM, 2024 WL 4273589, at *3 (S.D. Miss. Aug. 6, 2024), *report and recommendation adopted*, 2024 WL 4269759 (S.D. Miss. Sept. 23, 2024) (citing *Vaughn v. Comm'r of Soc. Sec.,* No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)). "[W]hether an ALJ provided an adequate discussion to allow for meaningful judicial review is a threshold question that is addressed before reaching the issue of substantial evidence." *Id.* (citing *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499–500 (S.D. Miss. 2021)).

The record confirms the ALJ engaged in a proper persuasiveness analysis and provided adequate discussion of Dr. Yazdani's opinion for meaningful judicial review. Dr. Yazdani, a licensed psychologist, concluded that Carlos M. "appears to be functioning in the average range of intellect" and that his "ability to perform routine, repetitive tasks and activities of daily living appears to be adequate." R. at 372 (Doc. [6] at 376). She opined that his social functioning is "variable" and that he "would likely have difficult interacting appropriately with co-workers, supervisors, and the public." *Id.* She also concluded, regarding his mental functions, that "[his] attention and concentration appear to be adequate." *Id.* at 373 (Doc. [6] at 377). In her determination, the ALJ included a lengthy discussion of Dr. Yazdani's consultative examination findings about Carlos M.'s mental limitations, including findings related to his attention span, immediate recall, and ability to interact with or be around others. *Id.* at 19 (Doc. [6] at 23).

13

Based on these findings, the ALJ concluded that Carlos M.'s mental impairments "cause moderate limitation" in two respects: in "his ability to interact with others" and "to concentrat[e], persist[], or maintain[] pace." *Id.* at 16 (Doc. [6] at 20). The ALJ also concluded, however, that he has no limitation in his ability "to understand, remember, or apply information" or "adapt or manage himself." *Id.* She then explained that she found Dr. Yazdani's opinion both persuasive as it was "supported by her own observations of [Carlos M.'s] functioning during the evaluation she conducted in her professional capacity as a licensed psychologist," and consistent with Carlos M.'s own reports "concerning the effects of demonstrated symptoms on [his] functioning." *Id.* at 19 (Doc. [6] at 23). The ALJ sufficiently explained the supportability and consistency factors in evaluating the persuasiveness of Dr. Yazdani's opinion.

Carlos M. contends that the ALJ erred in finding Dr. Yazdani's opinion persuasive and relies on *Cooley*. 587 F. Supp. 3d 489. There, a neurologist provided the only medical opinion that was consistent with a finding of disability. The ALJ, however, determined the opinion was unpersuasive. *Id.* at 500 (stating the doctor's treatment records "show generally unremarkable findings on physical exams"). The ALJ's explanation failed to address the neurologist's records, including those documenting the prescription of opioids for the claimant's conditions and for ongoing pain. *Id.* Because the court "[could not] discern how the ALJ considered the 'supportability' of the medical record evidence," it could not determine that substantial evidence supported the ALJ's finding. *Id.*; *see also id.* at 501 (finding the error was not harmless). But unlike the facts of *Cooley*, the ALJ's determination of Dr. Yazdani's opinion was supported by and consistent with Carlos M.'s treatment records—documents the ALJ also extensively discussed.

Carlos M. additionally relies on *Clay v. Kijakazi*, No. 4:21-CV-149-SA-DAS, 2022 WL 13989015 (N.D. Miss. Oct. 21, 2022), but that case too is factually distinguishable. There, the ALJ concluded that a nurse practitioner's opinion was not persuasive and rejected her opinion without referencing any records or findings. *Id.* at *5. That stands in contrast to the facts here, discussed above, where the ALJ documented her reasoning in finding Dr. Yazdani's opinion persuasive. *See also Jenkins v. Comm'r of Soc. Sec.*, No. 3:23-CV-305-JMV, 2024 WL 1158373, at *5 (N.D. Miss. Mar. 18, 2024) (distinguishing *Clay* where the ALJ found the practitioner's opinion persuasive and documented the sufficient information showing supportability and consistency). It bears mentioning that the only medical opinions the ALJ determined were *not* persuasive were opinions that Carlos M. was *less* restricted than what she had ultimately found. The ALJ explained that those opinions were neither supported by nor consistent with Carlos M.'s medical records or Dr. Yazdani's observations. R. at 19–20 (Doc. [6] at 23–24). The undersigned therefore finds that substantial evidence supports the ALJ finding that Dr. Yazdani's opinion was persuasive.

    2.  Substantial Evidence

Carlos M. argues that even if the ALJ found Dr. Yazdani's opinion persuasive, the ALJ failed to incorporate Dr. Yazdani's entire opinion in determining the RFC. Pl.'s Br. [9] at 12 (explaining the RFC is "fundamentally distinct" from Dr. Yazdani's opinion). In challenging the ALJ's RFC, Carlos M. implies that the RFC should mirror Dr. Yazdani's opinion, and if it does not, then the RFC is not supported by substantial evidence. But an ALJ need not match the RFC to a persuasive medical opinion. *See Miller*, 2023 WL 234773, at *4 (explaining there is "no requirement" that an ALJ adopt a specific assessment); *see Carson v. Comm'r of Soc. Sec.*, No. 6:21-CV-12, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022) ("There is no requirement that

15

an ALJ's RFC finding must mirror or match a medical opinion."), *report and recommendation adopted*, 2022 WL 2489340 (July 6, 2022). Nor is an ALJ required to give controlling weight to medical opinions. 20 C.F.R. § 404.1520c. Rather, the RFC determination is "the sole responsibility of the ALJ," *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012), and "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision." *Newton*, 209 F.3d at 455. "When substantial evidence supports the ALJ's findings, these findings 'shall be conclusive' and must be affirmed." *Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865, at *1 (5th Cir. July 12, 2023) (citing 42 U.S.C. § 405(g)).

In support of his argument, Carlos M. points to the exchange between his attorney and the VE at his hearing. Pl.'s Br. [9] at 12. At the hearing, his attorney asked the VE what impact interacting with others on a "less-than-occasional basis" would have on an individual's job. R. at 44–45 (Doc. [6] at 48–49). Because the VE said it would preclude employment, Carlos M. argues that the ALJ erred in her determination that he could interact with others at work occasionally and that the error was prejudicial. Pl.'s Br. [9] at 12. Carlos M.'s contention that the RFC should include a greater limitation (*i.e.*, more restrictive frequency) of workplace interactions is not supported by the record. An "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1.

Here, ample substantial evidence supports the ALJ's RFC determination. Based on her consideration of the entire record, the ALJ found that Carlos M. was moderately limited in interacting with others and that "assertions of greater limitation . . . are simply not supported by the actual evidence of record." R. at 19 (Doc. [6] at 23); *see* Ex. 5F, R. at 371–73 (Doc. [6] at 375–77) (Dr. Yazdani's notes indicating adequate recall, eye-contact, and attention span). Beyond Dr. Yazdani's assessment, the ALJ also considered the prior administrative findings,

many normal examination findings, and Carlos M.'s lack of mental health treatment. R. at 19 (Doc. [6] at 23); *see, e.g.*, Ex. 7F, R. at 415–43 (Doc. [6] at 419–47) (Jackson Hinds Comprehensive Clinic medical records from 2021–2023 indicating no depression or psychiatric/psychological complaints or problems, aside from a reference in late 2023 to Carlos M. being upset during an encounter and having poor eye contact); Ex. 4F, R. at 367 (Doc. [6] at 371) (April 2022 exam notes indicating normal mood and affect). The ALJ therefore found that his mental impairments have not caused a disabling limitation, and that his mental symptoms are addressed in the RFC. R. at 19 (Doc. [6] at 23); *see also Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005) ("Although [claimant] reported that she was depressed to her physician, she apparently did not seek treatment or medication for her depression. [Claimant's] failure to seek treatment for depression is an indication of nondisability."). The ALJ interpreted Carlos M.'s medical records, including his own admissions, to determine his capacity for work. *See Taylor*, 706 F.3d at 603. The undersigned finds substantial evidence supports the ALJ's determination in the RFC that he is capable of work that may require occasional interactions with others (besides the general public).

IV.     Conclusion and Recommendation

The undersigned has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, the undersigned recommends that the Court affirm the Commissioner's decision.

V.      Notice of Right to Object

In accordance with Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy of this report and recommendation, may serve and file written objections to the recommendations, with a copy to the United States

17

District Judge, the Magistrate Judge, and the opposing party. The District Judge may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to the undersigned with instructions. The parties are hereby notified that a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court for which there is no objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

    Respectfully submitted, this the 6th day of August, 2025.

s/ *Andrew S. Harris*  
UNITED STATES MAGISTRATE JUDGE
